488 A.2d 56

**In Reference to ADOPTION OF BABY BOY McKNIGHT, a Minor.**

**Appeal of Harriet I. OWENS.**

Superior Court of Pennsylvania.

Argued May 1, 1984.

Filed Feb. 1, 1985.

Albert Momjian, Philadelphia, for appellant.

Susan D. Scott, Doylestown, for appellee.

Before SPAETH, President Judge, and BROSKY and CIRILLO, JJ.

BROSKY, Judge:

This appeal follows the denial of a Petition for Adoption filed by appellant and her former husband. For the reasons that follow, we affirm.

Appellant, Harriet I. Owens and her then husband, John F. Owens, received the child Jonathan, whose adoption is at issue, on February 12, 1980. The couple had been interested in adopting a child for several years and obtained Jonathan a few days after his birth with the help of an intermediary.

A Notice of Intention to Adopt was filed by Mr. and Mrs. Owens on April 24, 1980 and the intermediary filed a report on October 20, 1980.

Testimony at the several hearings held in this case indicates that Mr. and Mrs. Owens were not prompt about

returning the forms necessary to finalize the adoption. It seems that Mrs. Owens in particular had difficulty completing the paper work and necessary physical examination. The home visit which is conducted by an Orphans Court investigator as part of the adoption process was also delayed and the evidence indicates that again this was due to the Owenses.

A home visit was made, however, and following it, on March 23, 1982, the Orphans' Court investigator filed a report recommending that the adoption be finalized. Apparently, though, she did express concern about the length of time that had elapsed without the adoption being finalized. On August 27, 1982 the investigator filed another report recommending that the adoption hearing scheduled for September 2, 1982 be continued or that the adoption not be finalized.

The investigator's change of position in August followed an unfortunate incident that occurred at the Owens home on August 20, 1982. On that night Mrs. Owens found her dog dead in the basement lying in a pool of blood. She became very upset and although it was after 11:00 p.m. she left her house, leaving Jonathan alone and asleep. The child was 2½ years old. Before leaving him Mrs. Owens had had a conversation with a veterinarian, whom she had telephoned about her dog. The veterinarian found the conversation disturbing since he understood Mrs. Owens to say that she had taken a drug overdose. Consequently, he called the police who arrived at the home and found Jonathan unattended. The Bucks County Children and Youth Services Agency was called and a social worker went to the house. Mr. and Mrs. Owens had been separated since early in August and Mr. Owens was also called to the house. Mrs. Owens returned around 3:30 a.m. and found the police, her husband and the social worker. She explained that she had been distraught and had gone to her brother's house and then to her mother's. Eventually the police and social worker left having decided that Jonathan was not in danger

for the time being. Mr. Owens' left shortly after the others.

When the Orphans' Court investigator learned of the August 20 incident and the Owens' separation she filed her August 27 report.

On August 31, 1982 following a conference attended by counsel for Mrs. Owens, Jonathan was removed from the Owens' home pursuant to a court order obtained by Children and Youth Services. He was placed in foster care and Mr. and Mrs. Owens visited with him once a week. They also attended counselling sessions and had Jonathan examined by a psychologist in an attempt to determine the cause of a speech lag which he exhibited at that time.

On November 17, 1982 another court conference was held attended by counsel for both parents as well as counsel appointed to represent Jonathan.

Jonathan was returned to the Owenses on November 18, 1982 where he remained until December 3, 1982 at which time he was again removed from the home pursuant to a court order obtained by Children and Youth Services.

From November 18 to December 2, Mr. and Mrs. Owens had resided together in their home and were attempting a reconciliation. However, on December 2 an argument ensued which culminated in Mrs. Owens calling the police to the house because Mr. Owens had knocked down the door to her bedroom. After the police had gone, Mr. Owens also left the house permanently. He then contacted Children and Youth Services and said that he no longer wished to go through with the adoption. The December 3 order followed. Jonathan was placed with another pre-adoptive family later that month and his natural parents' parental rights were terminated on February 9, 1983.

Harriet Owens sought to adopt Jonathan as a single parent and a series of hearings were held from March to September, 1983 which resulted in the December 1, 1983 Order from which this appeal is taken.

The primary issue before us is whether the lower court correctly determined that it was not in Jonathan's best interests to be adopted by Mrs. Owens. Preliminarily, however, we will address the other issues raised by appellant.

 Mrs. Owens argues that the lower court erred in entering its August and December Orders directing that Jonathan be removed from her home.[1] Specifically she contends that the court failed to comply with Orphans' Court Rules 3.2, 3.4 and 3.5 as they relate to the use of petitions and the giving of Notice. We note further that as early as the August 30 conference Mrs. Owens was represented by counsel. Her attorney also attended the conference that preceded Jonathan's return to her home in November. Any failure to provide notice was not contested by Mrs. Owens, nor did she suffer any prejudice therefrom.

Moreover, Orphans Court Rule 2.1 provides:

The rules adopted by the Supreme Court regulating the practice and procedure of the Orphans' Courts of this Commonwealth, and the rules adopted by such courts, shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. *The court at every stage of any action or proceeding may disregard any error or*

---

1. Appellant also contests the lower court's finding that she lacks standing to oppose the dismissal of her adoption petition since she no longer has physical custody of the child. We need not reach this issue, however, since it is clear that the court did not dismiss her petition simply because she no longer had custody of Jonathan.

Rather, the court noted that the petition had been filed by both Mr. and Mrs. Owens and that Mr. Owens no longer wished to pursue the adoption. More importantly the court carefully considered and discussed at length the testimony relating to Mrs. Owens' parenting of Jonathan and despite its observation that she lacked standing, effectively treated her as if she did have standing.

We would add, however, that we would not wish to give the impression that removal of a child from the home of prospective adoptive parents precludes those prospective parents from contesting the child's removal or the denial of their petition to adopt. Having filed such a petition, they are surely entitled to prosecute it.

*defect of procedure which does not affect the substantial rights of the parties in interest.* (Emphasis added).

No substantial rights of Mrs. Owens were affected by any procedural irregularity that may have occurred in this case.

The remaining issues raised by Mrs. Owens relate to the finding of the lower court that Jonathan's speech improved after he was removed from the Owens' home and to the decision making process by which the lower court determined that the Owens' petition should be denied. We have carefully reviewed the transcripts of the several hearings and the comprehensive opinion filed by the trial court and agree with its conclusion.

We recognize that this is a very difficult situation for Mrs. Owens, who, we might assume, genuinely cares for Jonathan. We are not without sympathy for her, but we must base our decision on what we perceive to be best for Jonathan, not Mrs. Owens. See *Matter of Adoption of Sturgeon*, 300 Pa.Super. 92, 445 A.2d 1314, 1321 (1982) (once the natural parents' parental rights have been terminated, the best interest of the child becomes the criterion by which a court must be guided.) The record discloses that Mrs. Owens has a history of depression which apparently manifested itself in an inability to complete projects, cooperate with her husband and lead a life outside of her home.

Particularly in view of Mr. Owens' decision not to seek the adoption we agree that it was not in Jonathan's best interest to be adopted by Mrs. Owens [2] and we therefore affirm the order of the lower court.[3]

[2] We will not reiterate what the lower court so carefully narrated, but we do note also the incident in June, 1982 in which the police were called to the Owens' home by a neighbor who had observed behavior by Mrs. Owens that caused her alarm.

[3] We emphasize that our decision today is based on the unique facts of this case and should not be seen as an indication that this court disapproves of adoptions by single persons.